UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEPHANIE N. POCHEPAN,

<div style="margin-left:auto">Plaintiff,         Case # 18-CV-857-FPG</div>

v.                                         DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

<div style="margin-left:auto">Defendant.</div>

## INTRODUCTION

Plaintiff Stephanie N. Pochepan brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 15. For the reasons that follow, the Commissioner's motion is GRANTED, Pochepan's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In March 2011, Pochepan protectively applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[1] 141, 148. She alleged disability since July 2009, which she later amended to January 2012. Tr. 29. In January 2013, Administrative Law Judge Timothy M. McGuan ("the ALJ") issued a decision finding that Pochepan had bipolar disorder but was not

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

disabled. Tr. 10-17. On appeal, the district court remanded the case for further factual development concerning the functional limitations that resulted from Pochepan's bipolar disorder. Tr. 501-02.

On February 6, 2018, Pochepan and a vocational expert ("VE") testified at a hearing before the ALJ. Tr. 438. On April 24, 2018, the ALJ issued a decision finding that Pochepan is not disabled. Tr. 406-23. Pochepan appealed the decision directly to this Court. *See* 20 C.F.R. §§ 404.984(a), 416.1484(a) (after a remand by district court, ALJ's decision becomes the final decision of the Commissioner).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

**II.     Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).[2]  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  *Id.*  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id.* § 404.1520(g).  To do so, the

---

[2] Because the DIB and SSI regulations mirror each other, the Court only cites the DIB regulations.  *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Pochepan's claim for benefits under the process described above. At step one, the ALJ found that Pochepan had not engaged in substantial gainful activity since the alleged onset date. Tr. 408. At step two, the ALJ found that Pochepan has several severe impairments, including bipolar disorder, personality disorder, and "rule out" poly-substance abuse. *Id.* At step three, the ALJ found that her impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 409.

Next, the ALJ determined that Pochepan retains the RFC to perform light work with additional limitations. Tr. 410-11. Concerning her mental impairments, the ALJ found that Pochepan can perform simple, unskilled work with only occasional interaction with the public and frequent interaction with coworkers and supervisors. Tr. 411. At step four, the ALJ found that Pochepan cannot perform her past relevant work. *Id.* At step five, the ALJ relied on the VE's testimony and found that Pochepan can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 422. Accordingly, the ALJ concluded that Pochepan is not disabled. *Id.*

### II. Analysis

Broadly, Pochepan contends that the ALJ's mental RFC was not supported by substantial evidence. The Court first summarizes the relevant evidence in the record. The evidence shows

that Pochepan has mental disorders that affect her mood, behavior, memory, concentration, and cognitive ability. But the record is mixed as to the exact extent of those limitations.

On the one hand, Pochepan testified that she cannot get along with people or remember simple things like her shopping list or work tasks. Tr. 447-48. Her moods can shift rapidly from "being very easily calm to getting loud and snapping about something." Tr. 447. She also cannot concentrate "at all," making it difficult to watch a movie or talk to another person. Tr. 449. There are medical records that support Pochepan's claims. She has been hospitalized several times over the years for psychiatric issues involving erratic and irrational behavior, extreme anxiety, and decompensation. Tr. 398, 617, 691, 974. Medical sources have noted Pochepan's reduced concentration, memory, and cognitive skills, as well as her tendency to become irritable and aggressive. *See, e.g.*, 694, 734, 1070, 1093. She has been prescribed a variety of different medications to treat her psychiatric complaints. *See, e.g.*, Tr. 1068.

On the other hand, there is evidence that Pochepan is not so limited. She reported that she obtained her GED and can pay bills, balance a checkbook, go shopping, clean, take care of her children, and attend to her personal needs. Tr. 176-79, 284, 736. She could be cooperative at appointments and evaluations, Tr. 283, 684, and objective testing showed only mild impairments in concentration and memory skills. Tr. 284, 735. Moreover, as the ALJ noted, in many instances Pochepan appears to have exaggerated symptoms in order to obtain prescription medication. *See, e.g.*, Tr. 650, 713, 803, 836. Pochepan has a history of overusing her own medication and using illegal drugs, including opioids and cocaine. *See* Tr. 632, 803, 836, 970. At least some of her hospitalizations occurred in circumstances where she was noncompliant with her medication or using other drugs. *See* Tr. 650, 843. Pochepan reported that when she was compliant with her medication, her mood and behavior stabilized. *See* Tr. 618, 1063, 1096.

In addition, two evaluations undercut Pochepan's claimed limitations. In June 2016, Dr. Fabiano performed a consultative examination. Pochepan was irritable and presented poorly during the examination. Tr. 734. Still, based on his observations and testing, Dr. Fabiano found that Pochepan was only mildly impaired in attention, concentration, and recent and remote memory skills. Tr. 735. He found Pochepan's cognitive functioning to be average, with fair insight and judgment. Overall, Dr. Fabiano opined that Pochepan could complete simple tasks and was moderately limited in her ability to maintain attention and concentration, relate adequately with others, and appropriately deal with stress. Tr. 736.

In February 2017, Dr. Santa Maria performed a psychological evaluation. Tr. 1067. He concluded that Pochepan had pre-existing depression and behavioral and cognitive limitations that were exacerbated by substance abuse and a traumatic brain injury that occurred in 2001. Tr. 1075. He noted, however, that her adaptive functioning—independently raising two children, handling her finances, managing her medication—was inconsistent with her low intellectual-testing scores, suggesting "sub-optimal effort." *Id.* He also observed that the "recent medical documentations reflect[s] drug seeking behaviors." *Id.* Dr. Santa Maria opined that Pochepan should continue with medication and counseling, but he did not identify any functional limitations resulting from her impairments. Tr. 1075-76.

As noted, the ALJ concluded that Pochepan had severe impairments of bipolar disorder, personality disorder, and "rule out poly-substance abuse." Tr. 408. He found that, due to these mental impairments, Pochepan could only perform simple, unskilled work where she occasionally interacted with the public and frequently interacted with coworkers and supervisors. Tr. 411. The ALJ discounted Pochepan's claims of extreme limitation in light of her drug-seeking behavior and inconsistent reports regarding the extent of her drug use. He also appears to have attributed her

6

more erratic behavior and mood swings to noncompliance with her medication regimen. *See* Tr. 420. Leaving aside Pochepan's assertions, the ALJ constructed the mental RFC based on her adaptive functioning, consultative examination results, and Dr. Fabiano's opinion. *See* Tr. 409-10, 420.

For three reasons, Pochepan argues that the ALJ's analysis was erroneous. First, she contends that the ALJ erred when he did not find her traumatic brain injury to be a severe impairment. The Court finds any such error to be harmless. "An error at step two—either a failure to make a severity determination regarding an impairment, or an erroneous determination that an impairment is not severe—can be harmless error if the ALJ continues the analysis and considers all impairments in [his] RFC determination." *Dechert v. Comm'r of Soc. Sec.*, No. 18-CV-315, 2019 WL 3074061, at *3 (W.D.N.Y. July 15, 2019).

Here, the Court can fairly glean from the ALJ's decision that he considered Pochepan's traumatic brain injury. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Specifically, the ALJ reasonably viewed that condition as a cause of her mental impairments, not as its own distinct impairment. This aligns with Dr. Santa Maria's conclusion that Pochepan had a pre-existing mental disorder that was exacerbated by drug use and traumatic brain injury.[3] *See* Tr. 418-19. The ALJ also cited treatment notes showing that Pochepan's mood and behavior issues stemmed in part from her traumatic brain injury. Tr. 415, 418. Therefore, the ALJ committed no error when he did not separately analyze the functional limitations that Pochepan's traumatic brain

---

[3] Pochepan interprets Dr. Santa Maria's opinion to be inconsistent with the ALJ's findings regarding functional limitations. *See* ECF No. 10-1 at 21. The Court is not convinced. Both the ALJ and Dr. Santa Maria viewed Pochepan's traumatic brain injury as a cause of her mental impairments, which then translated into various functional limitations on her mood, behavior, concentration, intellectual ability, etc. *Compare* Tr. 416, 418-20, *with* Tr. 1074-75. Dr. Santa Maria did not render a functional analysis, but he concluded that Pochepan's neurocognitive disorder was "mild" and, like the ALJ, he noted Pochepan's high level of adaptive functioning and drug-seeking behavior. Tr. 1074-75.

injury caused, as any such limitations were already subsumed in his analysis of the limitations posed by her mental impairments. *See Pokluda v. Colvin*, No. 13-CV-335, 2014 WL 1679801, at *9 (N.D.N.Y. Apr. 28, 2014) (no error when ALJ did not discuss claimant's obesity, where any associated limitations were "subsumed and already taken into account" by the RFC); *see also Young v. Comm'r of Soc. Sec.*, No. 18-CV-114, 2019 WL 3457220, at *4 (W.D.N.Y. July 31, 2019) ("[I]t is the ALJ's task to resolve genuine conflicts in the medical evidence." (internal quotation marks omitted)).

Second, Pochepan asserts that the ALJ's mental RFC was partially inconsistent with Dr. Fabiano's opinion, to which the ALJ afforded great weight. *See* ECF No. 10-1 at 21-22. The Court disagrees. The RFC's limitation of simple, unskilled work is consistent with Dr. Fabiano's opinion that Pochepan is moderately limited in her ability to make judgments on simple work-related decisions. *See Rhodes v. Astrue*, No. 08-53, 2011 WL 6372823, at *3 (W.D. Pa. Dec. 20, 2011); *see also* 20 C.F.R. § 404.1568(a) ("Unskilled work is work which needs little or no judgment to do simple duties . . . ."). The RFC is also consistent with Dr. Fabiano's opinion that Pochepan is moderately limited in her ability to respond appropriately to usual work situations and changes in work setting. *See Jenkins v. Colvin*, No. 15-CV-1135, 2016 WL 4126707, at *6 (E.D. Cal. Aug. 2, 2016) (collecting cases for proposition that "[a] claimant's . . . moderate limitations in dealing with changes in the workplace are encompassed in a residual functional capacity of simple, repetitive tasks"). In addition, Dr. Fabiano's opinion that Pochepan is moderately limited in her ability to interact appropriately with supervisors and co-workers is consistent with the ALJ's finding that she could frequently interact with those individuals. *See Wightman v. Comm'r of Soc.*

*Sec.*, No. 18-CV-6295, 2019 WL 2610712, at *2 (W.D.N.Y. June 26, 2019). Thus, this argument does not merit remand.[4]

Third, Pochepan asserts that the ALJ erred when he failed to discuss the opinion of Fred Kubus, a Physician's Assistant. But the Commissioner argues, and the Court agrees, that any such error was harmless. A treating Physician's Assistant is not an acceptable medical source and therefore his opinion is not entitled to the controlling weight afforded to treating physicians' opinions. *Drollette v. Colvin*, No. 13-CV-280, 2014 WL 2880022, at *5 (N.D.N.Y. June 23, 2014). Even so, "[a]s with recognized medical sources, the amount of weight to give other source opinions is based in part on the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole." *Thomas v. Berryhill*, 337 F. Supp. 3d 235, 241 (W.D.N.Y. 2018) (internal quotation marks omitted). Although an ALJ should generally explain the weight afforded to other-source opinions, *see id.*, a failure to do so will not warrant remand if there is "no reasonable likelihood" that proper consideration of the opinion would change the ALJ's determination. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010); *see also Otis v. Soc. Sec. Admin.*, No. 12-CV-167, 2013 WL 2422627, at *14 (D. Vt. June, 3, 2013) (collecting cases).

In this case, there is no reasonable likelihood that Kubus's opinion would have changed the outcome of the case. Kubus was candid in his assessment: he noted that he had no longstanding treatment relationship with Pochepan and that his opinion was based on only one "20 minute office visit." Tr. 1085. That office visit consisted of a subjective medical history and mental status examination, during which Kubus found that Pochepan had mildly impaired memory and impaired

---

[4] Pochepan also contends that Dr. Fabiano's opinion is infirm because it does not factor in her traumatic brain injury. Pochepan's premise is incorrect: Dr. Fabiano considered Pochepan's traumatic brain injury and explicitly noted it in his evaluation. *See* Tr. 733. He also indicated that he reviewed Pochepan's psychiatric records, which disclose her traumatic brain injury. *Id.*

attention and concentration but was otherwise normal. Tr. 1090-91. In his medical source statement, Kubus declined to identify any signs or symptoms of Pochepan's diagnoses, stating that he was not familiar enough with Pochepan "to complete this [section] accurately." Tr. 1086. He also omitted any onset date. Tr. 1089. Nevertheless, Kubus opined that Pochepan had severe functional limitations, including that she was seriously limited in her ability to remember work-like procedures and very short and simple instructions. Tr. 1087. He included no clinical findings or other explanations to justify those limitations, however. Tr. 1087-88.

No reasonable factfinder could give credence to Kubus's opinion. His relationship with Pochepan amounted to one brief office visit, which was so cursory that Kubus was unwilling to identify any signs or symptoms that Pochepan had. Kubus cited no clinical findings to support the limitations he identified. Given that the mental status examination was mostly normal, it appears that Kubus largely relied on Pochepan's subjective reports to complete the medical source statement. Some of the limitations he found, like the inability to remember even very short instructions, find no support in the other medical evaluations. These factors would compel a reasonable factfinder to discount the opinion.

Accordingly, the Court is not persuaded that remand is required based on any of the arguments that Pochepan raises, and therefore it affirms the Commissioner's decision.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is GRANTED and Pochepan's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: October 31, 2019
      Rochester, New York

_____

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court